IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02535-CMA-STV (consolidated for all purposes with Civil Action No. 17-cv-02862-MJW)

ECO-SITE LLC, a Delaware limited liability company, and
T-MOBILE WEST LLC, a Delaware limited liability company,

　　Plaintiffs,

v.

COUNTY OF PUEBLO, COLORADO, a Colorado County, acting by and through its Board of County Commissioners,

　　Defendant,

v.

SAM C. BROWN,

　　Intervenor Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon Plaintiffs Eco-Site, LLC ("Eco-Site") and T-Mobile West, LLC ("T-Mobile") (collectively, "Plaintiffs'") and Defendant County of Pueblo, Colorado's ("Pueblo County") Cross Motions for Summary Judgment. (Doc. ## 64–66.) For the reasons described herein, the Court denies without prejudice Plaintiffs' Motions for Summary Judgment and grants in part and denies in part Defendant Pueblo County's Motion for Summary Judgment.

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from two cases involving the same Plaintiffs and Defendant Board of County Commissioners for the County of Pueblo, Colorado,[1] and substantially similar claims under the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), *et seq.*, ("TCA"). In both cases, Plaintiffs allege that Defendant Pueblo County unlawfully denied their requests to construct telecommunications towers at two sites in Pueblo County. The Court consolidated for all purposes the two cases on April 9, 2018, and described the factual and procedural background of the matters in its Order Granting Defendant's Motion to Consolidate Cases. (Doc. # 24.) The Court incorporates herein its recounting of the facts from its April 9, 2018, Order. *See* (*id.*). It details factual and procedural developments only to the extent necessary to address the Cross Motions for Summary Judgment.

On September 27, 2018, after Defendant Pueblo County denied the permit applications at issue in this case, the Federal Communications Commission ("FCC") issued its Declaratory Ruling and Third Report and Order in *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088 (Sept. 27, 2018) (the "Declaratory Ruling"). *See* (Doc. # 66-3 at 146). On January 10, 2019, the Court of Appeals for the Tenth Circuit denied a request by several cities to stay the Declaratory Ruling, *City of San Jose, Cal. v. FCC*,

---

[1] The Court granted Sam C. Brown's request to intervene in this matter as a Defendant Intervenor on October 29, 2018. (Doc. # 55.) Defendant Intervenor Brown owns property adjacent to one of the proposed sites for Plaintiffs' wireless communication facilities. (*Id.* at 2.) Defendant Intervenor Brown has not moved for summary judgment.

No. 18-9568 (10th Cir. Jan. 10, 2019), and the Declaratory Ruling is therefore presently in effect.

On March 1, 2019, Defendant Pueblo County, Plaintiff Eco-Site, and Plaintiff T-Mobile separately filed Motions for Summary Judgment. (Doc. ## 64–66.) Plaintiff Eco-Site argues that the Declaratory Ruling requires summary judgment in its favor as to both its effective prohibition of service claims and its substantial evidence claims. Plaintiff T-Mobile joined Plaintiff Eco-Site's Motion (Doc. # 65 at 8) and separately argues that summary judgment should enter in its favor as to its effective prohibition of service claims (Doc. # 66 at 7–16). Neither Plaintiff moved for summary judgment on the 332(c)(7)(B)(i)(I) discrimination or Colo. R. Civ. P. 106(a)(4) administrative review claims. Plaintiffs argue that the standard for evaluating claims under Section 332 of the TCA announced in the FCC's Declaratory Ruling should apply to their claims in this case.[2] (*Id.* at 5.)

Defendant responds that the Declaratory Ruling is inapplicable to Plaintiffs' claims because the FCC ruling changes the standard applied to claims under Section 332 of the TCA and should not apply retroactively to the past conduct at issue in this case. (Doc. # 79 at 24–36.) Defendant moved for summary judgment as to all claims, but briefed only Plaintiffs' effective prohibition of service, substantial evidence, and discrimination claims. (Doc. # 64.)

---

[2] Plaintiff T-Mobile states that the Declaratory Ruling "represents a sea change in the law in favor of wireless telephone carriers" and, relevant to this case, "fundamentally impacts the relevant legal standard for determining whether Defendant has effectively prohibited [Plaintiff] T-Mobile from providing service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)." (Doc. # 66 at 7.)

3

In the event the Court declines to apply the Declaratory Ruling to this case, each party argues that it should succeed on summary judgment as to Plaintiffs' Section 332 claims under the "least intrusive means" standard applied by the Tenth Circuit in *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 889 (10th Cir. 2016). The three Motions for Summary Judgment are fully briefed. (Doc. ## 76, 77, 79, 85–87.) The Court entertained oral argument on the issue of retroactivity on June 27, 2019. (Doc. # 100.)

## II. **DISCUSSION**

As an initial matter, the Court does not need to address if it has jurisdiction to review the validity of the FCC's Declaratory Ruling under *PDR Network, LLC, et al. v. Carlton & Harris Chiropractic, Inc.*, 2019 WL 2527470 (S. Ct. 2019), because the Court declines to apply the Declaratory Ruling to the claims in this case on other grounds. *See Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 103 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

### A. INTRODUCTION AND SUMMARY CONCLUSION

In its Declaratory Ruling, the FCC suggests that the Declaratory Ruling is merely a "clarifying interpretation of Section 253 and 332(c)(7)"[3] and "applies with equal measure to the effective prohibition standard that appears in both Section 253(a) and

---

[3] *See, e.g.,* Declaratory Ruling at 8–9 ("[W]e find it necessary and appropriate to exercise our authority to interpret the Act and clarify the preemptive scope that Congress intended.").

4

332(c)(7)." The FCC "reaffirm[ed], as [its] definitive interpretation of the effective prohibition standard [in both Section 253(a) and 332(c)(7)], the test [it] set forth in *California Payphone*, namely that a state or local legal requirement constitutes an effective prohibition if it 'materially limits or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'" Declaratory Ruling ¶ 35, at 15 (footnote omitted).

Notably, however, in *In re Cal. Payphone Ass'n*, 12 F.C.C.R. 14191, 14206, 1997 WL 400726 (1997), the FCC's application of the "materially inhibits" standard was limited to a Section 253(a) claim. Section 332 was not addressed by the FCC in *California Payphone*.

On its face, the Declaratory Ruling appears to affirm the Tenth Circuit's treatment of these issues.[4] In actuality, however, the FCC Declaratory Ruling denounced the application of any standard more restrictive than the "materially inhibits" standard to Section 253(a) and 332(c)(7) claims. The Declaratory Ruling, thus, effectively affirmed the Tenth Circuit's analysis of Section 253(a) claims (to which the Tenth Circuit applies the "materially inhibits" standard, following *California Payphone*)[5] and disavowed the

---

[4] *See* Declaratory Ruling ¶ 31, at 13 ("[W]e express our agreement with the views already stated by the First, Second, and Tenth Circuits that the "materially inhibit" standard . . . is the appropriate standard for determining whether a state or local law operates as a prohibition or effective prohibition within the meaning of Sections 253 and 332.").

[5] *See Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1271 (10th Cir. 2004) (holding that an Ordinance that generated substantial costs would "materially inhibit" the provision of services and thus constituted effective prohibition under Section 253(a)) (citing *In re Cal. Payphone Ass'n,* 12 F.C.C.R. at 14206).

5

Tenth Circuit's treatment of Section 332[6] claims[7] (to which the Tenth Circuit applies the "least intrusive means" standard, *see AT&T*, 642 F. App'x at 889).

Plaintiffs in this case have brought their claims under Section 332 of the TCA, to which the Tenth Circuit applies a "least intrusive means" standard. Thus, the threshold question that must be addressed by the Court is whether the FCC's Declaratory Ruling applies to the permit denials at issue in this case.

The Court first addresses whether the Declaratory Ruling raises retroactivity concerns or is merely interpretive. Concluding that the Declaratory Ruling is not merely interpretive and, thus, does raise retroactivity concerns, the Court next analyzes whether the Declaratory Ruling should apply retroactively to the claims in this case. Declining to apply the Declaratory Ruling retroactively, the Court turns to its summary judgment analysis under the standard set forth in *AT&T*. The Court identifies several issues of disputed fact, the materiality of which is not established by the briefing before the Court.

---

[6] Section 332(c) gives rise to Plaintiffs' effective prohibition, substantial evidence, and discrimination claims. For the purposes of this Order—to avoid confusion between these claims or with the "effective prohibition" language of Section 253(a)—the Court will refer to Plaintiffs' effective prohibition of service claims as the "Section 332 claims", to Plaintiffs' Section 332(c)(7)(B)(i)(I) claim as the "discrimination claim", and to Plaintiffs' Section 332(c)(7)(B)(iii) claims as the "substantial evidence claims".

[7] *Compare AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 889 (10th Cir. 2016) (Plaintiff "could prevail on its effective-prohibition claim by showing that (1) the denial of a permit prevented [Plaintiff] from closing a "significant gap" in existing services and (2) its proposed facility was the *least intrusive means* of doing so." (emphasis added)) *with* Declaratory Ruling, *supra* note 4.

## B. MERELY INTERPRETIVE

### 1. Applicable Law

If the Declaratory Ruling is merely interpretive, the issue of retroactivity does not arise and this Court may apply the standard in the Declaratory Ruling to the conduct in this case. A ruling is deemed interpretive "if the rule in question merely clarifies or explains existing law or regulations." *Farmers Telephone Co., Inc. v. F.C.C.*, 184 F.3d 1241, 1250 (10th Cir. 1999). The Tenth Circuit has indicated that agency action is merely interpretive unless it overrules or disavows any controlling precedent or alters petitioners' (or, in the instant case, Defendant's) existing rights or obligations under the statute. *See id*. at 1250. If it does not, it is merely interpretive. If it does, then the Court must determine whether the agency action should apply retroactively.

### 2. Analysis

Petitioners in *Farmers* argued that the FCC disavowed controlling precedent by issuing an interpretation contrary to that of the National Exchange Carrier Association, a membership-based organization created by the FCC. 184 F.3d at 1250. Because NECA had no authority to perform adjudicatory or governmental functions, the Tenth Circuit concluded that NECA's interpretation was not binding. *Id.* at 1250–51. As such, the Tenth Circuit held that the FCC Order at issue in *Farmers* was merely interpretive because it did not overrule or disavow any controlling precedent and did not alter petitioners' existing rights or obligations under the regulations at hand.

Unlike the order in *Farmers*, however, the Declaratory Ruling in the instant case does disavow controlling precedent because it disavows the Tenth Circuit's decision in

7

*AT&T,* 642 F. App'x 886, which applied the "least intrusive means" standard to Section 332 claims. Further, the Declaratory Ruling alters Defendant's existing rights or obligations under the statute because the FCC interprets the TCA to require the "materially inhibits" standard in its Declaratory Ruling and the Tenth Circuit has interpreted the TCA to call for a "least intrusive means" standard. Both parties agree that the "materially inhibits" standard is more restrictive of local government and would require granting permits in more instances than the "least intrusive means" standard. The Court finds that the Declaratory Ruling's standard upsets the settled expectations of these parties as to their rights or obligations under the statute.

These two factors establish that the Declaratory Ruling is not merely interpretive. As such, the Court now turns to retroactivity.

### C. RETROACTIVITY

1. Applicable Law

As a general rule, legislative enactments and newly promulgated agency rules—due to their affinity to legislation—are given only prospective effect, whereas judicial decisions may also be given retroactive effect. *Munoz v. Lynch*, 631 F. App'x 510, 512 (10th Cir. 2015). "A statute, order, or edict 'operates retroactively' when it seeks to impose 'new legal consequences to events completed before its' announcement." *De Niz Robles v. Lynch,* 803 F.3d 1165, 1168 (10th Cir. 2015) (quoting *INS v. St. Cyr*, 533 U.S. 289, 321 (2001)).

The Tenth Circuit cautioned that administrative agency action should not be entitled to retroactivity merely because the agency chose adjudication over rulemaking:

> Form, then, can't obscure the fact that an agency exercising its *Chevron* step two/ *Brand X* powers acts in substance a lot less like a judicial actor interpreting existing law and a good deal more like a legislative actor making new policy—certainly as much like a legislator as the rulemaking agency in *Bowen* [*v. Georgetown University Hospital*, 488 U.S. 204 (1988)]—and thus fairly subject to the same presumption of prospectivity that attaches there . . . . While the Court has granted agencies a fair amount of flexibility in choosing between rulemaking and adjudication, it has long encouraged the former route because rulemaking offers more notice (due process) and better protects against invidious discrimination (equal protection). *See SEC v. Chenery Corp. (Chenery II )*, 332 U.S. 194, 202–03 [] (1947); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 [] (1974). Allowing agencies the benefit of retroactivity always and automatically whenever they choose adjudication over rulemaking would create a strange incentive for them to eschew the Court's stated preference for rulemaking—and render *Bowen* easily evaded.

*De Niz Robles*, 803 F.3d at 1172–74.

*Farmers* lays out the factors, derived from *Stewart Capital Corp. v. Andrus*, 701 F.2d 846, 848 (10th Cir. 1983), to balance in deciding whether to apply a new agency ruling retroactively. These factors, are:

> (1) whether the case is one of first impression;
> (2) whether the new rule is an abrupt departure from well-established practice or merely an attempt to fill a void in an unsettled area of law;
> (3) whether and to what extent the party against whom the new rule is applied relied on the former rule;
> (4) whether and to what extent the retroactive order imposes a burden on a party; and
> (5) whether and to what extent there is a statutory interest in applying a new rule despite reliance of a party on an old standard.

*Farmers*, 184 F.3d at 1251.

2. <u>Analysis</u>

In *De Niz Robles*, the Tenth Circuit addressed the question of whether an agency adjudication, such as the one here, should be given retroactive effect. 803 F.3d 1165. In

9

that case, the agency purported to interpret the law when it issued an order through adjudication. Applying the *Stewart Capital* balancing test, the Tenth Circuit disagreed with the agency's characterization of its order and decided it should apply only prospectively.

The retroactivity balancing test leads the Court to the same conclusion in this case. As to the first factor, the case before us is not one of first impression. The Tenth Circuit established the standard to apply to cases of this kind in *AT&T*.[8] As to the second, the Declaratory Ruling is an abrupt departure from well-established practice. As discussed above, this Circuit applies a standard for Section 332 claims that is different than the standard prescribed by the FCC in its Declaratory Ruling.[9] The circuit split regarding what standard should apply to these cases may make the area of law unsettled on a national scale,[10] but there was no void to fill in this Circuit. As to the

---

[8] If this were a case of first impression, the Court may have concluded the Declaratory Ruling is interpretive under *Farmers* because there would have been no controlling precedent in this Circuit for the FCC to disavow in its Declaratory Ruling. *See generally* Evan Barret Smith, New Regulations and Pending Cases, 163 U. PA. L. Rev. Online 159, 162 (2014) for discussion of the disadvantages of circuit courts hinging retroactivity analyses on whether an issue is one of first impression.

[9] The Parties' briefing also supports the Court's conclusion that this Ruling departs from well-established practice. *See e.g.*, (Doc. # 66 at 7) (The Declaratory Ruling "represents a sea change in the law in favor of wireless telephone carriers" and "fundamentally impacts the relevant legal standard for determining whether Defendant has effectively prohibited [Plaintiff] T-Mobile from providing service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)."); (Doc. # 77 at 17) ("Prior to the Declaratory Ruling, in order to prove a claim for effective prohibition, a carrier in this Circuit needed to show that [it satisfied the least intrusive means test from *AT&T*]."); (Doc. # 93 at 19) ("In the Declaratory Ruling, the FCC materially alters all previous tests employed by the courts, including the Tenth Circuit, for determining if a local government has 'effectively prohibited' wireless communications services under Section 332, rejecting those court-created tests as too restrictive to wireless carrier permit applicants.").

[10] *See* Declaratory Ruling ¶ 9–10, at 4.

fourth, application of the Declaratory Ruling would require, in the view of Defendant Pueblo County's attorney,[11] the granting of Plaintiffs' permit applications. This is a significant burden on Defendant Pueblo County.

These factors, considered in conjunction with the presumption against retroactive application of agency rulemaking and the lack of congressional authorization to apply this Declaratory Ruling retroactively,[12] lead the Court to conclude that the Declaratory Ruling should not apply retroactively to the claims in this case.[13] As such, the Court will apply the "least intrusive means" standard from *AT&T,* 642 F. App'x at 889.

### D. DISPUTED FACTS

The Court has identified several issues of disputed fact in this case. The materiality of these disputes under *AT&T* is not established by the briefing presently before the Court. These disputed issues include:

- Whether the coverage gap that Plaintiffs sought to address with their proposed tower at Vider Site could be resolved by co-locating on existing towers in the area;

---

[11] At oral argument on June 27, 2019 the Court asked defense counsel, "If the Plaintiffs . . . applied today with the new Declaratory Ruling in effect, you would have to grant them the permit, right?" Defense counsel responded: "Yeah, I believe under the materially inhibits test, as created, assuming it applies . . . counties have hardly any basis [to reject permit applications]."

[12] Neither party argues that Congress authorized retroactivity in this context. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 224–25 (1988) ("[I]f and when an agency believes that the extraordinary step of retroactive rulemaking is crucial, all it need do is persuade Congress of that fact to obtain the necessary ad hoc authorization. It may even be that implicit authorization of particular retroactive rulemaking can be found in existing legislation."); *see also De Niz Robles*, 803 F.3d at 1172 ("[N]o one before us contends that Congress has clearly authorized the BIA to apply its decision in Briones retroactively.").

[13] The Court notes that it applies the above tests to this case at the expense of judicial economy. Defense counsel has stated that the County will need to grant Plaintiffs' permit applications under the Declaratory Ruling. Past conduct suggests that Plaintiffs will reapply for the these permits and that Defendant will grant them under the Declaratory Ruling now in place.

- Whether said coverage gap could be resolved by co-locating on fewer than three existing towers in the area;

- Whether resolving said coverage gap through co-location would still require the creation of new towers;

- Whether the coverage gap that T-Mobile seeks to address with their proposed tower at Walker Site could also be resolved by an alternative site farther to the northeast; and

- The significance of variations in coverage modeled by Plaintiffs' maps.

### III. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that Defendant Pueblo County's Motion for Summary Judgment (Doc. # 64) is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to the legal standard that should apply to Plaintiffs' Section 332 claims. The Court declines to apply the FCC's Declaratory Ruling retroactively and will instead apply the "least intrusive means" standard from *AT&T Mobility Servs., LLC v. Vill. of Corrales,* 642 F. App'x 886 (10th Cir. 2016). The remainder of the Motion is DENIED WITHOUT PREJUDICE. It is

FURTHER ORDERED that Plaintiff Eco-Site's Motion for Summary Judgment (Doc. # 65) and Plaintiff T-Mobile's Motion for Summary Judgment (Doc. # 66) are DENIED WITHOUT PREJUDICE. It is

FURTHER ORDERED that the Parties may refile motions for summary judgment in light of this Order. The Parties should refocus their arguments on the merits of Plaintiffs' Section 332 claims and the materiality of disputed issues of fact under *AT&T*. Further, the Parties should synthesize the relevant technical information so as to highlight which facts are material to the dispositive issues. Motions for summary

12

judgment must be filed no later than January 7, 2020, and must not exceed 20 pages. It is

FURTHER ORDERED that Counsel shall confer regarding the possibility of appointing a special master to assist the Court with the technical issues presented by this case. The Parties are directed to notify the Court in writing no later than January 7, 2020, of their positions on the appointment of a special master.

DATED: December 23, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge