IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02535-CMA-STV

ECO-SITE LLC, a Delaware limited liability company, and
T-MOBILE WEST LLC, a Delaware limited liability company,

    Plaintiffs,

v.

COUNTY OF PUEBLO, COLORADO, a Colorado County, acting by and through its Board of County Commissioners,

    Defendant,

v.

SAM C. BROWN,

    Intervenor Defendant.

---

**ORDER ON RENEWED CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff T-Mobile's Renewed Motion for Summary Judgment in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV ("T-Mobile's Motion") (Doc. # 108) and Defendant Pueblo County's Re-Filed Combined Motion for Summary Judgment in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV Following Order on Cross Motions for Summary Judgment ("the County's Motion") (Doc. # 113). For the reasons that follow, the Court grants T-Mobile's Motion, enters summary judgment in Plaintiffs' favor, and denies the County's Motion. Plaintiff Eco-Site's Motion for Summary Judgment and Rule 106 Opening Brief (Doc. # 65) and

1

Plaintiff T-Mobile's Rule 702 Motion to Exclude Reports and Testimony of Lee Afflerbach in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV (Doc. # 110) are denied as moot.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court incorporates herein its recounting of the facts from its April 9, 2018 Order (Doc. # 24) and its December 23, 2019 Order (Doc. # 104). It details factual and procedural developments only to the extent necessary to address the renewed cross motions for summary judgment.

This matter arises from two cases that involved the same Plaintiffs and Defendant Board of County Commissioners for the County of Pueblo, Colorado, and substantially similar claims under the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), *et seq.*, ("TCA"). In both cases, T-Mobile and Eco-Site (together, "Plaintiffs") alleged that Defendant County of Pueblo, Colorado ("the County") unlawfully denied their requests to construct telecommunications towers at two sites in Pueblo County. The Court consolidated the cases for all purposes on April 9, 2018. Following the filing of the instant Motions, the Court granted Plaintiff Eco-Site's Unopposed Motion to Dismiss with Prejudice Civil Action No. 1:17-cv-02862-CMA-STV Only. (Doc. # 132.) Civil Action No. 17-cv-02535-CMA-STV remains pending before this Court. Therefore, the instant Motions are moot with respect to Civil Action No. 1:17-cv-02862-CMA-STV, and the Court reviews the Motions only to the extent they relate to Civil Action No. 17-cv-02535-CMA-STV.

The pending case concerns Plaintiffs' application for a special use permit ("SUP") that would allow them to build a new telecommunications tower at 790 28th Lane in Pueblo, Colorado ("Vider Site"). Plaintiffs initiated the instant action on October 23, 2017. Plaintiffs assert four claims for relief against the County, three of which arise under the same provision of the TCA: (1) effective prohibition of service, 47 U.S.C. § 332(c)(7); (2) substantial evidence, 47 U.S.C. § 332(c)(7); (3) discrimination, 47 U.S.C. § 332(c)(7); and (4) administrative review, CRCP 106(a)(4).[1]

Plaintiff T-Mobile, through its licensed affiliates, provides wireless communication services under licenses issued by the Federal Communications Commission ("FCC"). Plaintiff Eco-Site owns, develops, and operates telecommunications infrastructure that is used by wireless service providers, including T-Mobile, to provide telephone, data, text messaging, and other services to the providers' subscribers. Eco-Site leases space on its telecommunications towers to its wireless service provider customers. It also assists customers in locating and acquiring interest in properties that meet the customers' engineering requirements, as well as constructing telecommunications towers upon which the customers can place personal wireless service facilities.

T-Mobile has a significant gap in wireless telecommunication service in the area surrounding the Vider Site. (Doc. # 108-2 at 103, 167); (Doc. # 120 at 2). Before applying for a Special Use Permit at the Vider Site, Eco-Site identified potential locations for placement of a wireless telecommunications facility in the Vider area on

---

[1] The Court permitted Sam C. Brown to intervene in this case as a Defendant Intervenor on October 29, 2018. (Doc. # 55.) Defendant Intervenor Brown owns property adjacent to the Vider Site. (*Id.* at 2.) Defendant Intervenor Brown has not moved for summary judgment.

behalf of T-Mobile. (Doc. # 108-2 at 34–35.) Plaintiffs considered and evaluated a total of twelve alternative locations. (*Id.* at 54–62.) They assessed every potential colocation site within a 3-mile radius of the Vider Site, including every existing tower in the search ring, and found that no colocation possibility or combination of possibilities would remedy the gap in coverage. (*Id.*); (Doc. # 123-5 at 2). Additionally, Plaintiffs investigated six properties as potential new-build sites. (Doc. # 108-2 at 58–61.)

As a result of this investigation, Plaintiffs identified property at 28½th Lane, Pueblo, Colorado ("Myers property") as the preferred site location. Eco-Site negotiated and entered into a lease agreement with the owners of the Myers property and submitted a SUP application to the County to construct a tower on this property. (Doc. # 108-2 at 34–35.) The County advised Eco-Site that its zoning map was incorrect and that the Myers property was actually zoned with a much lower height restriction than previously indicated. (*Id.*) Eco-Site applied for a variance to place a wireless telecommunications facility at the Myers property. The County denied the Myers SUP application, despite the County's Planning Staff recommending approval. (*Id.* at 35.)

Thereafter, Eco-Site investigated the Vider Site as a possibility. Plaintiffs concluded it was the only site that could address the coverage gap in an area zoned to permit 100-foot towers (with the exception of the previously denied Myers property). (Doc. # 108-2 at 35, 54–62.) After ascertaining that the Vider Site would be a suitable location and the landlord was interested in leasing to Plaintiff, Eco-Site applied for a special use permit to construct a 100-foot, stealth windmill tower telecommunication facility at the Vider Site. Pueblo County's Planning Commission denied the application

4

on August 16, 2017. (Doc. # 93 at 10.) Eco-Site appealed the decision to Pueblo's Board of County Commissioners ("BOCC"), and the BOCC denied Eco-Site's appeal and affirmed the Planning Commission's decision on September 25, 2017. (*Id.* at 11.)

Plaintiffs and Defendant Pueblo County moved for summary judgment on all claims. (Doc. ## 64–66.) On June 27, 2019, this Court heard oral argument from the parties on whether the FCC's Declaratory Ruling[2] should apply to the conduct in this case, which predated the Declaratory Ruling. (Doc. # 100.) On December 23, 2019, the Court issued its Order on Cross Motions for Summary Judgment, in which it concluded that the Declaratory Ruling is not merely interpretive and should not apply retroactively to the claims in this case. *See generally* (Doc. # 104). The Court notified the parties that it would instead apply the "least intrusive means" standard from *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886 (10th Cir. 2016), and invited the parties to refile motions for summary judgment on Plaintiffs' effective prohibition of service claims in light of the Court's decision. The instant motions followed.

## II.  LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbot Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such

---

[2] Declaratory Ruling and Third Report and Order, *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088 (Sept. 27, 2018).

5

that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 118 F.3d 837, 839 (10th Cir. 1997).

When reviewing motions for summary judgment, a court may not resolve issues of credibility and must view the evidence in the light most favorable to the nonmoving party—including all reasonable inferences from that evidence. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int' l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant meets its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence from which a rational trier of fact could find for the nonmoving party." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific

exhibits incorporated therein." *Id*. Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   DISCUSSION

Under the standard applied by the Tenth Circuit in *Village of Corrales*, 642 F. App'x 886 (10th Cir. 2016), a plaintiff prevails on its effective prohibition of service claim by establishing two elements: (1) the denial of a permit prevented the plaintiff from closing a significant gap in existing services, and (2) its proposed facility was the least intrusive means of doing so. Effective prohibition is a legal question for the district court's consideration in the first instance; it does not require deference to the local zoning board. *Id.* at 888; *see also Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002).

The parties agree that a significant gap in service exists at the Vider Site. (Doc. # 108-2 at 103, 167); (Doc. # 120 at 2). Therefore, the Court's inquiry is limited to whether the proposed facility was the least intrusive means of closing the gap in service. The Court finds that Plaintiffs have established an effective prohibition of service under *Village of Corrales* and that the County has failed to overcome Plaintiffs' *prima facie* case.

### A.   PLAINTIFFS MADE A GOOD FAITH EFFORT TO IDENTIFY LESS INTRUSIVE ALTERNATIVES

Under *Village of Corrales*, a carrier satisfies the "least intrusive means" element of an effective prohibition of service claim where it made "'a good faith effort … to

7

identify and evaluate less intrusive alternatives,' such as 'less sensitive sites, alternative system designs, alternative tower designs, [and] placement of antennae on existing structures.'" 642 F. App'x at 890 (quoting *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cty.,* 196 F.3d 469, 480 (3d Cir. 1999)). This element requires only a good faith effort; it does not require the elimination of every theoretically possible alternative.[3]

In *Village of Corrales*, the Tenth Circuit affirmed the district court's grant of summary judgment in favor of the plaintiff, AT&T, where AT&T demonstrated that it had considered **three** alternatives and concluded that the subject site was the least intrusive means of remedying the gap in coverage. Importantly, the district court below did not weigh for itself whether the proposed site was the least intrusive means; instead, it was satisfied that "**AT&T** evaluated at least three alternative sites and [AT&T] concluded that each would have been comparably intrusive and less effective in covering the target area." *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 127 F. Supp. 3d 1169, 1175 (D.N.M. 2015) (emphasis added), *aff'd,* 642 F. App'x 886 (10th Cir. 2016).[4] AT&T rejected these alternative sites, in part, because they would provide less coverage to the target area and their close proximity to other AT&T facilities would cause interference.

---

[3] The County relies on out-of-circuit precedent to argue that Plaintiffs bear a "heavy burden" of proving their proposed site is the only feasible solution to close the gap in coverage. *See* (Doc. # 113 at 12–14). The standard articulated by the County is much more stringent than that applied by the Tenth Circuit in *Village of Corrales*, which the Court adopts herein.

[4] The district court repeatedly emphasized the actions the plaintiff took in good faith, as opposed to the soundness of the plaintiff's ultimate proposal. For example, the court determined that it need not consider whether the conclusions of the plaintiff's property value study were accurate or relevant; instead, the mere existence of the study "form[ed] part of the 'good faith effort' [the plaintiff] made to conform its proposal to the Village's concerns." *Id.*

Applying *Village of Corrales* to the instant case, Plaintiffs have indisputably demonstrated that they made a good faith effort to identify and evaluate less intrusive alternatives. Plaintiffs analyzed **twelve** alternatives, including six new building sites and colocation on existing sites. (Doc. # 108-2 at 54–62.) Plaintiffs even applied for a permit to build a tower at the Myers property, which the County denied. Plaintiffs' expert witness Richard Conroy methodically addressed in his expert report and supplemental declaration how each of the remaining alternatives—and combinations of colocation possibilities—is inadequate. *See* (Doc. # 108-2 at 9–11, 13, 54–62). Among their inadequacies are distance from the search ring,[5] excessive overlap with existing coverage (also known as interference), and inadequate coverage of the target area. Mr. Conroy's opinions are supported by objective evidence, including radio frequency propagation maps. Ultimately, Mr. Conroy concluded that the Vider Site is the least intrusive means of remedying T-Mobile's lack of required system coverage. (Doc. # 108-2 at 11, 100.) Plaintiffs' good faith effort to identify and evaluate less intrusive alternatives is manifest from the record. Therefore, Plaintiffs have established a *prima facie* case of effective prohibition of service under *Village of Corrales*.

### B. PUEBLO'S THREE-SITE ALTERNATIVE FAILS TO OVERCOME PLAINTIFF'S *PRIMA FACIE* CASE OF EFFECTIVE PROHIBITION OF SERVICE

The County argues that the Vider Site is not the least intrusive means of closing the coverage gap because Plaintiffs would obtain more coverage by colocating on three

---

[5] According to Mr. Conroy, a search ring is a radio frequency engineering tool "a geographic location that has a center point and a defined area in which to search for a location for a new wireless facility." T-Mobile created a search ring to locate a facility that would remedy the coverage gap. (Doc. # 108-2 at 51.)

existing towers. *See* (Doc. # 113 at ¶¶ 12–13). This argument is inadequately supported.

First, the County relies on the testimony of its sole expert witness, Lee Afflerbach,[6] to support its argument. Mr. Afflerbach conceded at his deposition that he is not qualified to testify to least intrusive means or otherwise does not have an opinion on the subject.[7] The County further cites to propagation maps attached to Richard Conroy's expert report to support its argument, *see* Doc. # 113 at 5 (comparing Doc. # 64-4 at 31 with *id.* at 41), but arguments by counsel about these propagation maps is not competent summary judgment evidence. On the other hand, Mr. Conroy modeled T-Mobile's coverage using the three-site alternative suggested by the County and concluded that colocating on all three towers would still produce a significant gap in coverage, leaving 494 people without in-building service. (Doc. # 108-2 at 10.) He further opined that Plaintiffs would need to construct an additional tower to resolve the coverage gap if they colocated on all three existing facilities. (*Id.* at 11.)

---

[6] Plaintiff T-Mobile moved to exclude Mr. Afflerbach's testimony pursuant to Fed. R. Civ. P. 702. (Doc. # 110.) Assuming Mr. Afflerbach's testimony is admissible, the Court finds in favor of T-Mobile on its effective prohibition of service claim. Therefore, the Court does not reach the 702 Motion.

[7] The County cites to Mr. Afflerbach's deposition to demonstrate that "locating additional equipment on an existing tower is less intrusive than building a new 100-foot tower adjacent to a residential neighborhood." (Doc. # 120-11 at 2.) However, Mr. Afflerbach qualified that he was opining on the subject as a **layperson** and not as a professional in the field. Indeed, in response to questions concerning least intrusive means, Mr. Afflerbach testified "I wasn't asked" (Doc. # 108-2 at 218), "not my assignment" (*id.*), and "[t]he only thing I would say is that if there's two existing towers, **I would think as a layperson, not as a professional in this field**, that adding a new tower has got to be obviously more visible than no new tower." (Doc. # 120-11 at 2).

Further, the County only speculates that this three-site alternative would work. "When a locality rejects a prima facie showing [of effective prohibition of service], it must show that there are some potentially available and technologically feasible alternatives." *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 998 (9th Cir. 2009). "A speculative alternative is not a viable alternative." *T-Mobile W. Corp. v. City of Huntington Beach*, No. CV 10-2835 CAS EX, 2012 WL 4867775, at *18 (C.D. Cal. Oct. 10, 2012) (citing *Anacortes*, 572 F.3d at 998). The County has not shown that this three-site alternative is available or technologically feasible. As Plaintiffs underscore, the County has not shown that the owners of these towers are willing to lease space to T-Mobile, where T-Mobile would place its equipment, that the towers can handle T-Mobile's equipment, that the surrounding neighbors would not object, or that the County would definitely grant permits for all three sites. The County's suggestion of a three-site alternative does not overcome Plaintiffs' *prima facie* case of effective prohibition, *Anacortes*, 572 F.3d at 998, or create a genuine issue for trial, *Anderson*, 477 U.S. at 256.

## IV.     CONCLUSION

The Court need not reach Plaintiffs' remaining claims because summary judgment on Plaintiffs' effective prohibition of service claim is dispositive. *See Vill. of Corrales*, 127 F. Supp. 3d at 1175 (concluding that judgment in favor of plaintiff on its effective prohibition claim mooted plaintiff's remaining TCA and administrative review claims), *aff'd,* 642 F. App'x 886 (10th Cir. 2016). For the foregoing reasons, it is ORDERED as follows:

- Plaintiff T-Mobile's Renewed Motion for Summary Judgment in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV (Doc. # 108) is GRANTED;

- Defendant Pueblo County's Re-Filed Combined Motion for Summary Judgment in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV Following Order on Cross Motions for Summary Judgment (Doc. # 113) is DENIED;

- summary judgment is hereby entered in favor of Plaintiffs in Civil Action No. 17-cv-02535-CMA-STV;

- the County of Pueblo, Colorado, shall immediately approve the permits Plaintiffs require to construct the wireless facility at the Vider Site;[8]

- the following motions are DENIED AS MOOT:

    - Plaintiff Eco-Site's Motion for Summary Judgment and Rule 106 Opening Brief (Doc. # 65);

    - Plaintiff T-Mobile's Rule 702 Motion to Exclude Reports and Testimony of Lee Afflerbach in Cases 17-cv-02535-CMA-STV and 17-02862-CMA-STV (Doc. # 110); and

    - the Parties' Joint Motion to Request Telephonic Status Conference in Advance of Final Trial Preparation Conference (Doc. # 134);

---

[8] The appropriate remedy for effective prohibition of service under the TCA is injunctive relief in the form of an order to issue the relevant permits. *See Vill. of Corrales*, 127 F. Supp. 3d at 1175 (citing *T–Mobile Northeast LLC v. Inc. Vill. of E. Hills,* 779 F.Supp.2d 256, 275 (E.D.N.Y. 2011) ("Although the TCA does not specify a remedy for violations of [this] subsection ... the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits.")).

- the Final Trial Preparation Conference and Bench Trial in this matter are hereby VACATED; and
- the Clerk of Court is respectfully directed to enter judgment in favor of Plaintiffs in Civil Action No. 17-cv-02535-CMA-STV and close this case.

DATED: June 25, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge